**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Frank Lloyd Wright Foundation, an Arizona non-profit corporation, ) ) ) | Nos. CV-08-1112-PHX-DGC CV-08-1125-PHX-FJM |
| Plaintiff, ) ) | **ORDER** |
| vs. ) ) ) | |
| Steven W. Kroeter, an individual; Archetype Associates, Inc., a New York corporation; Archetype Associates, a New York general partnership; Steven Fields Design Associates, a New York general partnership, ) ) ) ) ) ) ) | |
| Defendants. ) ) ) | |

Defendant Gerald Morosco has filed a motion to dismiss the claims asserted against him by Plaintiff Archetype Associates, Inc. Dkt. #25.[1] Archetype has responded to the motion and Morosco has replied. Dkt. ## 36, 40. The Court will dismiss the claim for negligent misrepresentation, but not the claim for fraud.

**I.     Background.**

The facts in this order are taken from Archetype's First Amended Complaint against Morosco. Dkt. #2 (CV 08-1125). For purposes of this motion, the Court must accept the facts as true. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

---

[1] Unless otherwise specified, citations in this order are to the docket in CV 08-1112.

1   On November 1, 1983, the Frank Lloyd Wright Foundation ("Foundation") entered 2 into an agreement with Steven Fields Design Associates ("SFDA"), a New York general 3 partnership wholly-owned by Steven W. Kroeter and his wife. Dkt. #2 ¶¶ 9, 16. The 4 agreement designated SFDA as the Foundation's exclusive licensing agent of intellectual 5 property associated with Frank Lloyd Wright. *Id.* ¶ 16. In 1990, Kroeter began to operate 6 this licensing business as a sole proprietorship under the name "Archetype Associates." *Id.* 7 ¶ 21. In 1992, Kroeter incorporated Archetype Associates as a New York Corporation. *Id.* 8 ¶ 22.

9   In 1998, Archetype attempted to terminate its relationship with the Foundation, but 10 agreed to continue the relationship after negotiating with the Foundation and agreeing to an 11 amendment of the initial agreement. *Id.* ¶ 23. The amendment provided for automatic one-12 year renewals of the agreement unless either party elected not to extend the agreement and 13 provided notice to the other party. *Id.* ¶ 24. The amendment also specified that when the 14 agreement expired, Archetype would receive payments of 25% of the gross licensing fees 15 and royalties received by the Foundation for the first five years following expiration, 20% 16 for the next five years, and 15% for the five years after that. *Id.* ¶ 25. The agreement 17 required the Foundation to make these payments to Archeype within thirty days after the 18 Foundation received payment from its licensees. *Id.* ¶ 26.

19   Shortly after the amendment was executed, the Foundation hired new officers who 20 chose not to implement the strategic licensing plan previously proposed by Archetype and 21 approved by the Foundation's Board of Directors. *Id.* ¶ 27. The new officers also declined 22 to develop a new strategic plan. *Id.* As a result, in May 2002, Archetype terminated the 23 agreement. *Id.* The Foundation then established specific accounting procedures to ensure 24 that Archetype received its share of the licensing program revenue as required by the 25 amended agreement. *Id.* ¶ 34.

26   In 2005, Morosco became chairman of the Foundation's Board of Directors. *Id.* ¶ 31. 27 During 2006, Archetype expressed concern about the Foundation's failure to make timely 28 payments and to provide accurate information regarding licensing program revenue. *Id.* ¶ 36.

- 2 -

1    On September 21, 2006, the Foundation's CEO, Phillip Allsopp, told Archetype that the
2    Foundation was having serious financial problems. *Id.* ¶¶ 32, 37. Allsopp requested that
3    Archetype donate its share of licensing program revenue to the Foundation, but Archetype
4    declined. *Id.* ¶¶ 37, 38.

5    On October 17, 2006, Kroeter met with Allsopp and Morosco in New York. *Id.* ¶ 39.
6    Allsopp and Morosco acknowledged that the Foundation's obligations to Archetype were
7    legitimate and binding contractual commitments. *Id.* They also assured Kroeter that the
8    Foundation would honor these commitments. *Id.*

9    On November 2, 2006, Archetype sent a letter to the Foundation demanding payment
10   for all outstanding amounts as well as accurate documentation for all licensing revenues paid
11   to Archetype. *Id.* ¶ 40. The Foundation did not comply. *Id.* In February and May of 2007,
12   the Foundation and Allsopp again acknowledged that the Foundation's obligations under the
13   amendment were legitimate and binding contractual commitments and assured Archetype and
14   Kroeter that the Foundation would honor these commitments. *Id.* ¶ 41. Despite these
15   assurances, the Foundation has not made payments to Archetype since March 31, 2007, and
16   has not provided an accounting of the licensing program revenue. *Id* ¶¶ 42, 45.

17   On June 13, 2008, the Foundation filed a complaint against Kroeter, Archetype
18   Associates, Archetype Associates, Inc., and SFDA. Dkt. #1. The Foundation asserts claims
19   for breach of the covenant of good faith and fair dealing, breach of contract, unjust
20   enrichment, breach of fiduciary duty, and declaratory judgment. *Id.*

21   Shortly thereafter, on June 17, 2008, Archetype filed a separate complaint against the
22   Foundation, Allsopp, and Morosco. Dkt. #2 (CV 08-1125). Against the Foundation,
23   Archetype alleges breach of contract, breach of the implied covenant of good faith and fair
24   dealing, fraud, and negligent misrepresentation and asks for an accounting, treble damages
25   pursuant to A.R.S. § 44-1798.02, and a declaratory judgment. *Id.* Archetype asserts claims
26   of fraud and negligent misrepresentation against Allsopp and Morosco. *Id.* at 22-25. The
27   cases were consolidated on August 7, 2008. Dkt. #20.

28

Morosco asks the Court to dismiss the negligent misrepresentation and fraud claims. Dkt. #25. Morosco bases his motion on four grounds: (1) the economic loss rule bars both claims because Archetype has only suffered economic loss, (2) neither claim is cognizable under Arizona law because a misrepresentation cannot be based on a promise of future performance, (3) Archetype has not sufficiently pled detrimental reliance, and (4) Morosco has a qualified privilege, as a director, to act on behalf of the Foundation. Dkt. #2 at 7-16.

**II.    Standard of Review.**

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith*, 84 F.3d at 1217. "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). The Court may not assume the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**III.    Promise of future performance.**

Morosco asserts that Arizona law does not provide a claim for misrepresentation based on a promise of future performance. Although both claims against Morosco are based on the same alleged misrepresentations, different standards apply to the claims of negligent misrepresentation and fraudulent misrepresentation.

**A.    Negligent misrepresentation.**

Archetype claims that Morosco negligently misrepresented that the Foundation would honor its commitments under the agreement and that Archetype would receive its share of the licensing program revenue. Dkt. #2 ¶ 83. To establish a claim for negligent misrepresentation in Arizona, Archetype must prove Morosco provided false information intended to guide Archetype, that Archetype justifiably relied on the false information and sustained damages, and that Morosco failed to exercise reasonable care or competence in

- 4 -

obtaining or communicating the false information. *See St. Joseph's Hosp. & Med. Ctr v. Reserve Life Ins. Co.*, 742 P.2d 804 (Ariz. Ct. App. 1986), *rev'd in part on other grounds*, *St. Joseph's Hosp. & Med. Ctr v. Reserve Life Ins. Co.*, 742 P.2d 808; Restatement (2d) of Torts § 552 (1977).

Citing *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992), Morosco asserts that negligent misrepresentation requires a misrepresentation or omission of a fact, and that a promise of future conduct is not a statement of fact. In response, Archetype concedes that there is no exception to the general rule that a promise of future conduct is not capable of supporting a claim for negligent misrepresentation. Dkt. #36 at 7 n.2. Because the alleged promise made by Morosco that the Foundation would honor its contractual commitments is clearly a promise of future conduct, the Court will grant the motion to dismiss the negligent misrepresentation claim.

**B.     Fraud.**

A claim for fraud can be based on unfulfilled promises of future performance so long as the statements "'were made with the present intent not to perform.'" *McAlister*, 829 P.2d at 1260 (quoting *Spudnuts v. Lane*, 641 P.2d 912, 914 (Ariz. Ct. App. 1982)). Morosco argues that Archetype cannot prove fraud because Arizona courts have applied the present intent exception only where the promise of future performance was made by a party to the underlying the contract. Dkt. #25 at 11. Morosco asserts that because he was not a party to the agreement between Archetype and the Foundation, any reliance by Archetype on his representations would be *per se* unreasonable. *Id.* at 12. Morosco fails to cite any legal authority for his assertion that this reliance is unreasonable as a matter of law.

Archetype alleges that Morosco made representations that the Foundation would honor its contractual commitments and pay Archetype its share of the licensing program revenue. Dkt. #2 ¶ 79. Archetype alleges that these statements were false, that Morosco knew they were false, and that Archetype rightfully and detrimentally relied on them. *Id.* ¶ 80. The Court must assume that these statements are true. *Smith*, 84 F.3d at 1217; *see Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977). The Court must also assume that all

1  general allegations "embrace whatever specific facts might be necessary to support them."
2  *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) (citations omitted).
3        Morosco was chairman of the Foundation's board of directors when the alleged
4  misrepresentations were made. The Court cannot say at this stage of the litigation that
5  Archetype's reliance on the board chairman's promises was *per se* unreasonable, even if the
6  chairman was not personally a party to the contract. More must be known about the
7  representations before the Court can conclude whether they induced reasonable reliance,
8  whether they were made solely on behalf of the Foundation, and whether they can give rise
9  to a fraud claim against Morosco personally.

10 **IV.   Economic loss rule.**

11       Morosco asserts that the economic loss rule bars Archetype's fraud claim. Dkt. #25
12 at 10-11. According to Morosco, the economic loss rule precludes the recovery of purely
13 economic damages in tort unless accompanied by personal injury or property damage. *Id.*
14 at 7 (citing *Carstens v. City of Phoenix*, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2004)).

15       Morosco's argument is incorrect. "Tort law has traditionally protected individuals
16 from a host of wrongs that cause only monetary damage[,]" including the torts of fraud and
17 conversion which remedy purely economic losses. *Giles v. Gen. Motors Acceptance Corp.*,
18 494 F.3d 865, 874 (9th Cir. 2007). This Court has held that "the economic loss rule has no
19 application to the tort of fraud under Arizona law." *Moshir v. Patchlink Corp.*, No. CV-06-
20 1052-PHX-FJM, 2007 WL 505344 (D. Ariz., Feb. 12, 2007); see also Evans v. Singer, 518
21 F. Supp. 2d 1134, 1138-47 (D. Ariz. 2007); *KD & KD Enter., LLC, v. Touch Automation,*
22 *LLC*, No. CV-06-2083-PHX-FJM, 2006 WL 3808257 (D. Ariz., Dec. 27, 2006) (explaining
23 that such an extension would compromise both the principles underlying the economic loss
24 rule and public policy).

25 **V.   Plaintiff sufficiently pled detrimental reliance.**

26       Morosco contends that the claim for fraud must be dismissed because Archetype has
27 failed to plead reliance sufficiently. Dkt. #25 at 13. Morosco asserts that Archetype has not
28 suffered any independent harm from its reliance on the alleged misrepresentation. *Id.* at 14.

1 Morosco claims that any harm suffered by Archetype is the same harm that would have
2 resulted from breach of the agreement.
3     This is a factual argument not suitable for a motion to dismiss.  Archetype has pled
4 that Morosco's alleged misrepresentations induced it to continue negotiations and thereby
5 incur substantial attorneys' fees.  Whether Archetype can prove this allegation, and whether
6 the fees truly resulted from Morosco's alleged misrepresentations, are matters to be decided
7 after discovery.

8 **VI.    There is no privilege to commit fraud.**

9     In the interest of allowing directors to work effectively on behalf of a corporation
10 without fear of personal tort liability, the acts of a director are privileged so long as the
11 director acts in good faith and with the belief that his acts were for the lawful interests of the
12 company.  *See Ong Hing v. Arizona Harness Raceway, Inc.*, 459 P.2d 107, 115 (Ariz. Ct.
13 App. 1969); *see also Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821, 826 (Ariz. App. Ct.
14 2001).  While it is true that "directors are generally shielded from liability for acts done in
15 good faith on behalf of the corporation, their status does not shield them from personal
16 liability to those harmed as a result of intentionally harmful or fraudulent conduct." *Albers*,
17 31 P.3d at 826.  Accepting as true Archetype's allegations that Morosco knowingly made
18 false representations, the director's privilege does not at this stage protect him from liability
19 as a matter of law.

20     **IT IS ORDERED** that Defendant Morosco's motion to dismiss (Dkt. #25) is **granted**
21 with respect to negligent misrepresentation and **denied** with respect to fraud.

22     DATED this 3rd day of December, 2008.

_David G. Campbell_
David G. Campbell
United States District Judge

- 7 -