**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| The Frank Lloyd Wright Foundation, an Arizona non-profit corporation, )<br><br>Plaintiff, )<br><br>vs. )<br><br>Steven W. Kroeter, an individual; Archetype Associates, Inc., a New York corporation; Archetype Associates, a New York general partnership; Steven Fields Design Associates, a New York general partnership, )<br><br>Defendants. ) | Nos. CV-08-1112-PHX-DGC<br>        CV-08-1125-PHX-FJM<br><br>**ORDER** |

On June 13, 2008, the Frank Lloyd Wright Foundation ("the Foundation") filed suit in this Court against Steven W. Kroeter, Archetype Associates ("AA"), Archetype Associates, Inc. ("AAI"), and Steven Fields Design Associates ("SFDA") (collectively "Defendants"). Dkt. #1. Four days later, AAI filed suit in this Court against the Foundation, Philip Allsopp (the Foundation's CEO), and Gerald Morosco (former Board Chairman of the Foundation) (collectively "the Foundation parties"). *See* CV-08-1125, Dkt. #2. The two cases have been consolidated.

AAI has filed a motion for summary judgment on several of the Foundation's claims and on one of its own claims (Dkt. #142), Kroeter has filed a motion for partial summary judgment on Count V of the Foundation's complaint (Dkt. #168), and Defendants have filed a motion to strike the Foundation's reply to their response to the Foundation's statements of

facts (Dkt. #186). In addition, the Foundation has filed a motion for summary judgment on several of AAI's claims and on several of the Foundation's own claims (Dkt. #170), and a motion to strike Kroeter's motion for partial summary judgment on Count V of the Foundation's complaint (Dkt. #175). No party has requested oral argument.[1]

For reasons that follow, the Court will grant summary judgment in favor of AAI on AAI's breach of contract claim (with the exception of damages) and on the Foundation's breach of contract, implied covenant, and unjust enrichment claims. The Court will grant summary judgment for the Foundation on AAI's negligent misrepresentation claim. The Court will deny Kroeter's motion for partial summary judgment, the Foundation's motion to strike, and Defendants' motion to strike.

## I. Background.

In 1983, the Foundation entered into a licensing agency agreement ("the 1983 Agreement") with SFDA, a New York general partnership owned by Kroeter and his former wife, Joan Fields. Dkt. #180, ¶ 1-2. Under the 1983 Agreement, SFDA was to be the Foundation's "worldwide sales agent and representative in promoting the sale, marketing, licensing, sublicensing and commercial application" of several of Frank Lloyd Wright's decorative designs. Dkt. #142 at 2-3.[2] The 1983 Agreement required SFDA to secure licensing agreements for the Foundation, collect royalty payments from licensees, and forward payment to the Foundation after deducting its own commission. *Id.* at 3.

In August of 1987, Kroeter and Fields began conducting some of SFDA's business under the name Archetype Associates ("AA"). *Id.* By 1990, Fields was no longer involved in the business of SFDA or AA, and Kroeter operated AA as a sole proprietorship. *Id.* at 4. Although the 1983 Agreement was between SFDA and the Foundation, Kroeter used the

---

[1] The parties' memoranda fail to comply with the requirement of Local Rule of Civil Procedure 7.1(b)(1) that all papers, including footnotes, use 13 point type. All counsel shall comply with this requirement in future filings.

[2] Citations to pages in the parties' filings will be to page numbers applied by the Court's electronic docket at the top of each page.

name AA in correspondence and royalty payment checks sent to the Foundation. *Id.* In 1992, Kroeter formed the corporation Archetype Associates, Inc. ("AAI") and started handling the Foundation's business and sending the Foundation royalty payments under the AAI name. *Id.*

The 1983 Agreement between SFDA and the Foundation was set to expire on October 31, 1998. Dkt. #161 at 20. The Foundation and AAI continued their business relationship beyond that date and, in 2001, entered into an "Amendment To Agreement" ("the 2001 Amendment") which was made effective as of October 15, 1998. The 2001 Amendment extended the 1983 Agreement, and provided that upon expiration or termination of the 1983 Agreement as amended AAI would receive a percentage of any of the Foundation's licensing royalties for 15 years following termination, which was to be paid "not later than thirty (30) days after the FOUNDATION's receipt of the same." Dkt. #180-11 at 12, 17 (capitalization in original). In its recitals, the 2001 Amendment stated that "[s]ince 1983, [AAI], or a predecessor entity, Steven Field Design Associates, a New York general partnership, has acted as the worldwide licensing agent and representative of the FOUNDATION." Dkt. #143 at 12. The 2001 Amendment also stated:

> In the event any provision of this ARTICLE VII is alleged or finally determined to constitute an "excess benefit transaction" within the meaning of Section 4958 of the Internal Revenue Code of 1986, as amended, or any successor or similar provision, the PARTIES will amend the provisions of this ARTICLE VII to give effect, to the fullest extent permitted by law, to their original intentions, as expressed in this ARTICLE VII, without constituting such an "excess benefit transaction." The provisions of this ARTICLE VII shall specifically survive expiration of the TERM of this AGREEMENT and the rights and obligations set forth in this ARTICLE VII shall inure to the benefit of and be binding upon the AGENT and the FOUNDATION and their respective successors and assigns.

*Id.* at 17. The 2001 Amendment also transferred responsibility for receiving, processing, and issuing royalty and licensing fee payments from AAI to the Foundation. Dkt. #142 at 6.

The 1983 Agreement, as amended by the 2001 Amendment, was terminated by AAI on December 31, 2003. Dkt. #180 at 17. As described above, AAI thereafter was to continue receiving post-termination royalties for 15 years. Dkt. #143-11 at 17.

From 2003 to 2005, the Foundation made post-termination royalty payments to AAI, some of which were paid more than 30 days after the Foundation received the money, in violation of the 2001 Amendment. Dkt. #180 at 17. In September of 2006, AAI wrote to the Foundation regarding the fact that many of the payments were late, and informed the Foundation that AAI considered the Foundation to be in material breach of contract for failing to make timely payments. Dkt. #143-13 at 33-35. The Foundation admits that by "October 11, 2006, the Foundation had $25,485.26 in accounts payable to AAI – $12,212.26 of which was within 30 days, and $13,273.55 of which was in arrears." Dkt. #161, ¶ 43. Dan Nesbitt, the accounting manager of the Foundation, stated in his deposition that the Foundation stopped processing royalty payments to AAI altogether in June or July of 2007. Dkt. #143-13 at 10-11.

Around August of 2007, the Foundation retained a tax attorney to determine whether payments to AAI might violate the Internal Revenue Code because they constituted "excess benefit transactions."[3] Dkt. #160 at 8. In late September of 2007, this attorney advised the Foundation to stop making payments to AAI (even though, according to Nesbitt, the Foundation had already stopped making payments) until it could reach resolution of the tax issues. *Id.* Based on this advice, the Foundation sent a letter to Kroeter asking him to provide documents to assist in the investigation of the tax issue. Dkt. #143-16 at 52-54. AAI declined to provide many of the requested documents. Dkt. #161, ¶ 41.

On June 13, 2008, the Foundation filed suit in this Court against Kroeter, AA, AAI, and SFDA, claiming that AAI breached the 2001 Amendment by refusing to provide all of the requested documents and by refusing to amend the 2001 Amendment to avoid any excess benefit transaction. Dkt. #1. The Foundation also alleged that AAI and Kroeter breached the covenant of good faith and fair dealing by failing to provide the documents, that AAI was unjustly enriched by receiving license fees actually due to SFDA under the 1983 Agreement,

---

[3] AAI contends that this tax attorney was retained in August of 2007, while the Foundation contends that he was retained a few months earlier than that. *See* Dkt. #161, ¶ 67. This dispute, however, is immaterial.

and that AAI and Kroeter breached their fiduciary duties by failing to disclose information. *Id.* The Foundation also sought a declaratory judgment as to whether past or future payments to AAI or Kroeter constitute excess benefit transactions. *Id.* at 14-16.

A few days later, AAI filed suit against the Foundation, Allsopp, and Morosco alleging breach of contract based on the Foundation's failure to pay all monies due under the 2001 Amendment, and also alleging breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. *See* CV-08-1125, Dkt. #2.

## II.  Legal Standard.

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323.

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith*

1 *Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d
2 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also*
3 LRCiv 1.10(l)(1). If the nonmoving party's opposition fails to cite materials in the record,
4 the Court is not required to search the record for evidence establishing a genuine issue of
5 material fact. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001);
6 *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

7 **III.    AAI's Complaint.**

8 AAI asserts the following causes of action against the Foundation or the Foundation
9 parties: Count I (breach of contract), Count II (accounting), Count III (breach of the implied
10 covenant of good faith and fair dealing), Count V (declaratory judgment), Count VI
11 (common law fraud), and Count VII (negligent misrepresentation).[4]  AAI seeks partial
12 summary judgment on Count I (breach of contract). Dkt. #142. The Foundation parties seek
13 summary judgment on Counts VI (common law fraud) and VII (negligent misrepresentation),
14 and also on AAI's claimed damages. Dkt. #170.

15 **A.    Count I – Beach of Contract.**

16 To prevail on a claim for breach of contract, the plaintiff must prove the existence of
17 a contract between the plaintiff and defendant, a breach of the contract by the defendant, and
18 resulting damage to the plaintiff. *See Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz.
19 1998) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 237 (Ariz.
20 1963)).[5]  Based on the undisputed facts, AAI has provided evidence sufficient to establish
21 a prima facie case of breach of contract. The 1983 Agreement as amended by the 2001
22 Amendment was clearly a contract between AAI and the Foundation. Dkt. #143-1 at 8-26;
23 Dkt. #143-11 at 11-18. Under that contract, the Foundation was obligated to make royalty
24 payments to AAI within 30 days of the Foundation's receipt of licensing fees, an obligation

25

26 [4] Count IV (treble damages) was dismissed by stipulation. Dkt. #166.

27 [5] The 1983 Agreement states that it is governed by Arizona law. Dkt. #143-1 at 25.
28 The 2001 Amendment does not change this provision. The parties apply Arizona law in their
motions, and the Court will apply it in this order.

it breached by paying some of the royalties late and by not paying others at all.  *See* Dkt. #161, ¶ 43 (Foundation admits that by "October 11, 2006, the Foundation had $25,485.26 in accounts payable to AAI - . . . $13,273.55 of which was in arrears"); Dkt. #143-13 at 10-11 (Dan Nesbitt, the accounting manager at the Foundation, testifying that the Foundation stopped making royalty payments to AAI by June or July of 2007); Dkt. #161, ¶ 58 (Foundation admits that, two months after AAI sent a payment demand to the Foundation, the Foundation still owed money to AAI).  This failure to make royalty payments deprived AAI of funds to which it was entitled, resulting in financial damages. These undisputed facts show breach of contract under Arizona law.

The Foundation argues that even if AAI has presented evidence sufficient to show a prima facie case of breach of contract, AAI is not entitled to summary judgment because the Foundation has several valid defenses: (1) the Foundation's performance was excused because AAI made a fraudulent misrepresentation in the 2001 Amendment, rendering it voidable; (2) AAI cannot enforce the 2001 Amendment because the Foundation has a right to rescind; (3) the Foundation's performance is excused because AAI breached the 2001 Amendment first by making a fraudulent misrepresentation; (4) AAI is equitably estopped from claiming breach; (5) AAI waived any claim of breach; and (6) the Foundation's performance is excused because AAI breached the agreement by failing to investigate whether the payments were an excess benefit transaction.  Dkt. #160 at 9-15.  The Court will consider each argument in turn.

### 1.	Invalidity Due to Fraudulent Misrepresentation.

The Foundation asserts that the 2001 Amendment is voidable because it was formed on the basis of a fraudulent misrepresentation – that SFDA was a predecessor entity of AAI. Dkt. #160 at 9.  The Foundation argues that SFDA was not a predecessor entity of AAI and, because the following false representation was included in the 2001 Amendment, the Amendment may be voided: "[s]ince 1983, [AAI], or a predecessor entity, Steven Field Design Associates, a New York general partnership, has acted as the worldwide licensing agent and representative of the FOUNDATION."  Dkt. #143 at 12.  AAI disagrees that the

- 7 -

misrepresentation is fraudulent and contends, in any event, that the Foundation has not shown it was material to the 2001 Amendment or that the Foundation relied on it.

"[W]hen a contract is sought to be enforced against a party," "[that party] may defend on the ground that his consent thereto was obtained through fraud, for fraud vitiates all transactions into which it enters." *Mut. Benefit Health & Accident Ass'n v. Ferrell*, 27 P.2d 519, 523 (Ariz. 1933). In order to prove fraud, the party must show: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the hearer in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely on it, and (9) the hearer's consequent and proximate injury. *Id.*; *Wells Fargo Credit Corp. v. Smith*, 803 P.2d 900, 905 (Ariz. App. 1990). "Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence." *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982) (internal quotations and citations omitted). Because the Foundation asserts fraudulent misrepresentation as an affirmative defense, it has the burden of showing sufficient evidence for a jury to find in its favor at trial. *Celotex*, 477 U.S. at 323-24; *City of Tucson v. Clear Channel Outdoor, Inc.*, 181 P.3d 219, 231 (Ariz. App. 2008).

The Foundation asserts that all nine elements are met or that, at the very least, there is a dispute of fact as to whether the nine elements are met. Dkt. #160 at 10. The Court concludes, however, that the Foundation has failed to show evidence of at least two elements required for the contract to be voidable: (1) the materiality of the alleged misrepresentation and (2) the Foundation's reliance on its truth.

"A misrepresentation is material where it 'would be likely to affect the conduct of a reasonable man with reference to . . . ' the transaction in question." *Hubbs v. Costello*, 528 P.2d 1257, 1260 (Ariz. App. 1974) (quoting Restatement of Contracts § 470(2)) (ellipses in original). In this case, the Foundation has pointed to no evidence showing that AAI's representation would be likely to affect the conduct of a reasonable person with reference to the transaction in question. Instead, the Foundation makes the bare assertion, without any

- 8 -

citation to the record, that "[t]he Foundation would not have entered into the 2001 Agreement had it known AAI was not SFDA's successor-in-interest, because the new agreement would not absolve the Foundation's liabilities to SFDA." Dkt. #160 at 10. This conclusory assertion is not sufficient to show that there is a genuine issue of fact for trial on the materiality of the alleged misrepresentation. *See Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data."). This is particularly true where, as here, a party is attempting to prove fraud. *See Echols*, 647 P.2d at 631 (requiring every element of fraud to "be supported by sufficient evidence").

The Foundation also fails to show that it relied on the representation. The Foundation asserts that it "relied on Kroeter's representation that SFDA was a predecessor entity to AAI by entering into the 2001 Agreement, under which the Foundation agreed to pay royalties to AAI for licensees that SFDA had attracted." Dkt. #160 at 11. But the Foundation fails to cite to any evidence in support of this assertion. As the party opposing summary judgment, the Foundation "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Foundation's conclusory assertion is not sufficient to show that there is an issue of fact for trial on the element of reliance. *Angel*, 653 F.2d at 1299.[6]

---

[6] The cited pages in Dkt. #160 are not the only places in the Foundation's briefing where it fails to produce evidence in support of the materiality and reliance elements of fraud. Each time the Foundation asserts that the SFDA-successor representation was material and that the Foundation relied on it, the Foundation fails to cite evidence in the record. *See* Dkt. #170 at 12, 13, & n.9; Dkt. #184 at 6, 7. This complete lack of evidence on the materiality and reliance elements of fraud mandates the Court's ruling on summary judgment. The Court also notes, however, that there is substantial reason in the record to doubt that Kroeter's representation regarding the SFDA/AAI relationship played any meaningful role in the Foundation's decision to enter the 2001 Amendment. William Hicks, an attorney for the Foundation, became concerned in the early 1990s about the relationship between SFDA and AAI. Dkt. #171 at 3-4. Hicks testified that Kroeter provided several different and inconsistent explanations of the SFDA/AAI relationship, that Hicks asked Kroeter for documents confirming that AAI was a valid successor to SFDA, but that Kroeter never provided the documents. *Id.* These communications occurred in 1991, 1992, and 1993.

Because the Foundation has failed to cite any evidence showing that the successor representation was material or that the Foundation relied on it, there is no issue for trial on the Foundation's fraud defense to AAI's breach of contract claim. The Court will not deny AAI's motion for summary judgment on this ground.

## 2. Right to Rescind.

The Foundation contends that AAI cannot enforce the 2001 Amendment because it has the right to rescind the contract based on AAI's misrepresentation about the SFDA/AAI relationship. Dkt. #160 at 11. In support, the Foundation cites *Hampton v. Sandy Cowen Agency, Inc.*, 739 P.2d 1331, 1333 (Ariz. App. 1987). *Hampton* held that an employer could void an employment contract based on material misrepresentations by an employee, even if the employer was unaware of the misrepresentations when the contract was entered. *Id.* The Foundation argues that it too has the right to void the 2001 Amendment because of AAI's misrepresentation, even though it did not know about the misrepresentation until recently. Dkt. #160 at 12.

In *Hampton*, the representations by the employee were clearly material and the employer necessarily relied on them. In order to prevent the employer from learning that he had been fired from his previous job after only two months of work, the employee falsely told the employer that he had been self-employed. The employee also overstated the amount of his previous income in order to secure higher compensation from the employer. The Arizona Court of Appeals had little difficulty concluding that both lies were material and that the employer would have acted differently if the truth had been told. *Hampton*, 739 P.2d at 1332. In the present case, as discussed above, the Foundation has failed to provide any

---

*Id*. at 7. Hicks discussed them with the Foundation. *Id*. Even though these concerns were never resolved, the Foundation chose to continue doing business with Kroeter and AAI over the next decade. This course of dealing suggests that the nature of the SFDA/AAI relationship was not material to the Foundation's decision to do business with AAI and Kroeter. The Foundation did business with AAI, and paid it millions of dollars, notwithstanding unresolved questions about its successor relationship to SFDA. The 2001 Amendment was merely a continuation of that years-old business relationship.

evidence that the successor representation was material or that the Foundation relied on it. Given that the Foundation bears the burden of showing that this affirmative defense precludes a finding of breach of contract, *City of Tucson*, 181 P.3d at 231, and given that the Foundation has failed "to identify with reasonable particularity the evidence that precludes summary judgment," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations and citations omitted), the Court will not deny summary judgment for AAI on this ground.

### 3. Prior Breach Through Fraudulent Misrepresentation.

The Foundation argues that AAI's fraudulent misrepresentation about its successor status constituted a prior breach of the 2001 Amendment that excused the Foundation's performance. This argument fails for the same reason as the first two: AAI has failed to provide evidence that the misrepresentation was material or that the Foundation relied on it.

### 4. Equitable estoppel.

The Foundation argues that AAI is equitably estopped from claiming breach because of the alleged successor misrepresentation. Dkt. #160 at 12. Equitable estoppel is an affirmative defense and the Foundation bears the burden of proving its elements. *City of Tucson*, 181 P.3d at 241. "A claim for estoppel arises when one by his acts, representations or admissions intentionally . . . induces another to believe and have confidence in certain material facts and the other justifiably relies and acts on such belief causing him injury or prejudice." *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 818 (Ariz. 1987). "The three elements of equitable estoppel are traditionally stated as: (1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Valencia Energy Co. v. Ariz. Dept. of Revenue*, 959 P.2d 1256, 1267-68 (Ariz. 1998). As already noted, the Foundation has failed to provide evidence that the representation was material or that the Foundation relied on it when signing the 2001 Amendment.

### 5. Waiver.

The Foundation contends that AAI waived any claim of breach based on late payments because it accepted late payments. But the 2001 Amendment itself states that "[a]ny waiver by either party of any breach on the part of the other party shall not warrant a waiver of any other breach on the part of such other party." Dkt. #143-2 at 22. Thus, any waiver by AAI that might have arisen from its acceptance of a particular late payment did not constitute a waiver of claims based on future late or missed payments.

Moreover, even if AAI's decision to accept late payments from the Foundation acted as a waiver of its expectation of strict compliance with the 30-day payment requirement, AAI revived its ability to expect timely payments as of November 2, 2006, when it notified the Foundation that it was in breach due to the lateness of payments. Dkt. #161, ¶ 54. This was a clear notice to the Foundation that AAI was not waiving its right to assert breach based on delinquent payments, particularly as to future payments. *See Kammert Bros. Enters., Inc. V, Tanque Verde Plaza Co.*, 428 P.2d 678, 683 (Ariz. 1967) ("Once strict performance of the contract has been waived as to timely payment, a clear and definite notice to buyer followed by allowance of a reasonable time to bring payments up to date would be necessary in order to reinstate the [terms] of the contract.").

What is more, AAI is not claiming that the Foundation's only breach was late payment. The heart of AAI's claim is that the Foundation has failed to pay sums due since early 2007. Dkt. #2 at 17. Even if AAI had waived its right to demand payment within 30 days, it did not waive its right to receive payments altogether.[7]

### 6. Prior Breach Regarding "Excess Benefit Transactions."

The Foundation contends that AAI was the first party to breach the contract when it refused to "provid[e] information, seek[] a joint determination from the IRS, or reform[] the

---

[7] In one sentence, the Foundation argues that the parties' course of conduct established that the lateness of the Foundation's payments was not material. DKt. #160 at 13. The Foundation provides no legal authority to support this argument. More importantly, as noted above, AAI's complaint claims breach based on the Foundation's failure to pay, not on its late payment. Dkt. #2 at 17.

agreement" to ensure that there was no "excess benefit transaction." Dkt. #160 at 14. But this alleged breach occurred in September of 2007 (*see* Dkt. #161, ¶ 39; Dkt. #160 at 14), almost one year after AAI notified the Foundation that it was breaching the contract by failing to make royalty payments in a timely manner (*see* Dkt. #161, ¶ 43; Dkt. #161, ¶ 54) and several months after the Foundation stopped making royalty payments altogether (*see* Dkt. #143-13 at 10-11). The Foundation contends that it did not intentionally withhold payments to AAI in July of 2007 (this is a disputed issue (*see* Dkt. #161, ¶ 62)), but a breach of contract need not be intentional. *See* Restatement (Second) of Contracts §235(2) ("When performance of a duty under a contract is due *any non-performance* is a breach.") (emphasis added). The Foundation does not dispute that it owed money to AAI (some of which was significantly overdue), nor that it had stopped making payments to AAI before September of 2007. Dkt. #143-13 at 10-11. Thus, the alleged breach by AAI did not occur before the Foundation's own breach of the contract. To the contrary, as will be seen in part IV(A)(2) of this order, the undisputed facts show that the Foundation's material breach of the 2001 Amendment in the summer of 2007 excused AAI's performance obligations under the contract before September of that year.

**7.      Some Licenses May Not Give Rise to Royalty Payments.**

The Foundation argues that not all licenses give rise to royalty payments to AAI, and that AAI's claim therefore cannot be decided without determining which payments AAI is entitled to receive. Dkt. #160 at 14. This is a damages issue on which AAI does not seek summary judgment. Dkt. #167 at 9. The issue will be resolved at trial as part of determining AAI's damages.

**8.      Conclusion.**

AAI has established a prima facie case of breach of contract and the Foundation has failed to present evidence or authority sufficient to sustain any of its defenses to the claim. As a result, AAI is entitled to summary judgment on its breach of contract claim.

**B.      Count VI - Fraud.**

The Foundation parties seek summary judgment on Count VI of AAI's complaint. Count VI claims that the Foundation, Allsopp, and Morosco made false representations that the Foundation would pay AAI and honor its contractual commitments.   CV-08-1125, Dkt. #2 at 21-22.   The representations allegedly occurred during a lunch meeting with Kroeter in New York City on October 17, 2006.  The Foundation parties argue that the claim is based on promises regarding future events that cannot form the basis for fraud.  *Spudnuts, Inc. v. Lane*, 641 P.2d 912, 914 (Ariz. App. 1982) (stating that a fraud claim cannot "be predicated on unfulfilled promises, expressions of intention of statements concerning future events unless such were made with the present intent not to perform").   AAI does not dispute that the fraud claim is based on promises regarding future events, but argues that the promises constituted fraud because they were made without a present intent to perform. Dkt. #179.  If a promise is "made without present intention to perform," "the misstatement of the present intention is regarded as a misrepresentation of fact" that will support a claim for fraud.  *Moshir v. PatchLink Corp.*, CV-06-1052-PHX-FJM, 2007 WL 505344, *5 (D. Ariz. Feb. 12, 2007) (internal quotations and citations omitted).

AAI bears the burden of proof on this claim and must show that the Foundation parties intended to deceive AAI at the time the representations were made.  AAI must do so with more than "doubtful, vague, speculative, or inconclusive evidence." *McAlister v. Citibank (Arizona)*, 829 P.2d 1253, 1260 (Ariz. App. 1992) (internal quotations and citations omitted). The fact that the Foundation parties ultimately failed to perform is not enough.  *Id.*

AAI points to the following evidence: (1) before making the representations at the meeting on October 16, 2006, Allsopp suggested that AAI donate its remaining post-termination compensation to the Foundation; (2) only nine days after the meeting, Allsopp wrote in an internal Foundation email stating that he wanted to re-negotiate or cancel the 2001 Amendment; (3) the Foundation's Finance Committee Chair expressed amazement that Allsopp promised the Foundation would honor the 2001 Amendment; (4) several weeks after the meeting, Allsopp determined that the Foundation would proceed with a different

arrangement; and (5) despite Allsopp's promise, the Foundation did not make full payment to AAI. Dkt. #179 at 12-13. Taken as true and construed in AAI's favor, as required at this summary judgment stage, the Court concludes that a reasonable jury could infer that the promises made at the October 17, 2006 meeting were made without a present intent to perform. On October 26, 2006 – just nine days after the meeting – Allsopp wrote the following to others within the Foundation: "I'd like to embark on an initiative to either re-negotiate or cancel the Kroeter contract based on my meeting with him in New York. It might mean some creative moves by the Foundation . . . I'm trying to get to a point where we never, ever have such a ridiculous contract arrangement with someone like Kroeter again." Dkt. #180-13 at 16. Such a statement, made only days after Allsopp and others promised Kroeter they would honor the contract in full, clearly could be seen as evidence that they had no intent of honoring the contract. This factual issue must be resolved by the jury. Summary judgment based on the Foundation parties' lack of intent to defraud therefore is not appropriate.

### C.    Count VII – Negligent Misrepresentation.

Count VII alleges the Foundation parties made misrepresentations at the October 17, 2006 meeting regarding their intent to honor the 2001 Amendment. CV-08-1125, Dkt. #2 at 23-24. AAI concedes that summary judgment may be entered on this claim (Dkt. #179 at 3 n. 2), and for good reason. A negligent misrepresentation claim cannot stand on promises of future conduct and, unlike fraud, cannot even stand on a "promise made without present intention to perform." *Moshir*, 2007 WL 505344 at *7. The Court will grant summary judgment to the Foundation on this claim.

### D.    Damages.

The Foundation parties seek summary judgment on AAI's damages for two primary reasons: (1) AAI is not entitled to future damages because, under the 2001 Amendment, payment to AAI is only due 30 days after a licensee pays the Foundation, and (2) AAI's claimed damages are speculative. The Court disagrees with the Foundation as to both arguments and will deny its request for summary judgment on damages.

### 1. Future Damages.

The Foundation argues that AAI cannot receive future damages, but instead must wait to receive payments from the Foundation until the time they are due under the 2001 Amendment. Under Arizona law, a plaintiff may seek future damages if a defendant has anticipatorily breached a contract. *Healey v. Coury*, 783 P.2d 795, 802 (Ariz. App. 1989). Anticipatory breach occurs when there is "a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance when the time fixed for it in the contract arrives." *Diamos v. Hirsch*, 372 P.2d 76, 78 (Ariz. 1962). There must be more than a "mere implication that a party will not perform." *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 680 P.2d 1235, 1247 (Ariz. App. 1984).

AAI contends that there is a question of fact as to whether the Foundation anticipatorily breached the 2001 Amendment. AAI has presented facts from which a reasonable jury could find that the Foundation manifested an unequivocal intent to repudiate the 2001 Amendment. The Foundation stopped making payments to AAI in June or July of 2007, it "suspended payments pending resolution of its tax concerns" on the ground that "AAI's failure to [provide the requested documentation] breached the 2001 amendment," and it filed suit for breach of contract against AAI in 2008, alleging that it has no legal obligation to pay AAI because AAI breached the contract first. Dkt. #170 at 6. This evidence could lead a reasonable jury to find that the Foundation formed and conveyed an unambiguous intent not to perform any future obligations under the contract.[8]

---

[8] The Foundation argues that, "[h]ad Defendants (1) provided requested information to reveal the truth about the various legal entities and (2) cooperated with the Foundation in resolving the relevant tax issues, the Foundation would have resumed payments allegedly owing to AAI." Dkt. #184 at 5. Given that the Foundation breached the 2001 amendment first, however, AAI, as discussed in section IV.A.2. of this order, was excused from further performance under the contract and had no obligation to provide the documentation to the Foundation or to cooperate with the Foundation. The Foundation's insistence upon AAI's performance can constitute anticipatory repudiation. *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 431 (Ariz. App. 1983) ("[I]f one party clearly insists upon a performance to which he is not entitled, that is a repudiation.").

Even if it anticipatorily breached, the Foundation argues that AAI must await the time for performance before suing for damages. Dkt. #184 at 12. The Foundation relies on *Aboud v. DeConcini*, 842 P.2d 1328, 1332 (Ariz. App. 1992), in which the court discussed the fact that the doctrine of anticipatory repudiation does not apply to a unilateral contract. The contract between AAI and the Foundation, however, was not unilateral. The Foundation promised to pay AAI in exchange for AAI's promise to obtain licenses for the Foundation. *Knack v. Indus. Comm'n*, 503 P.2d 373, 376 (Ariz. 1972) ("In a unilateral contract the exchange for the promise is something other than a promise; in a bilateral contract promises are exchanged for one another.") (internal quotations and citations omitted). Moreover, even if the Foundation's breach occurred at a time when the Foundation had received all of the licenses AAI would ever provide, this does not foreclose future damages. *See Healey*, 783 P.2d at 802 (stating that Arizona courts allow for recovery of future damages due to anticipatory repudiation even when "the contract has been rendered unilateral because the plaintiff has fully performed at the time of the repudiation"). Because there is a question of fact as to whether the Foundation anticipatorily breached the 2001 Amendment, the Court cannot grant summary judgment on future damages.

## 2. Speculative Damages.

The Foundation argues that AAI's claimed damages are speculative because they wrongly assume: (1) "renewals of existing licenses" and (2) "that each licensee not only will remain in business but will generate the same level of revenue in the future as in years past." Dkt. #170 at 18. AAI has submitted a report from damages expert Stephen K. Clarke. Mr. Clarke considered the Foundation's financial reports showing gross royalty receipts, the Foundation's general ledger, and other documents, has taken a weighted averages of royalties from the period of 2003 to 2007, and has projected a future damages award. Dkt. #171-17 at 2-40. On the present record, the Court cannot find that this is insufficient evidence for a jury to make a determination of damages that is reasonably certain and not based on speculation. To the extent there are questions on whether certain licenses will be renewed

and will continue to generate the same level of revenue, those questions will be resolved at trial.

## IV.  The Foundation's Complaint.

The Foundation asserts the following causes of action against AAI:  Count I (breach of the covenant of good faith and fair dealing), Count II (breach of contract), Count III (unjust enrichment), Count IV (breach of fiduciary duty), and Count V (declaratory judgment).  Counts I and IV are also asserted against Kroeter individually.[9]  AAI seeks summary judgment on Counts I, II, III, IV, and part of Count V.[10]  Dkt. #142.

Kroeter, in a separate motion for summary judgment, seeks partial summary judgment on Count V.  Dkt. #168.  AAI seeks to join in Kroeter's separate motion, and the Foundation has moved to strike Kroeter's motion or, in the alternative, to prevent AAI from joining it. Dkt. #175.

Finally, the Foundation parties affirmatively seek summary judgment on Counts I, II, and IV of the Foundation's complaint.  Dkt. #170 at 11-14.

For reasons that follow, the Court will deny summary judgment to AAI on Counts IV and V and will grant summary judgment in favor of AAI on Counts I, II and III.  The Court will deny Kroeter's motion for summary judgment on Count V.  The Court will deny summary judgment in favor of the Foundation on Counts I, II, and IV.

Defendants have also filed a motion to strike the Foundation's reply (Dkt. #185) to their response to the Foundation's statement of facts.  Dkt. #186.  The Court has considered the arguments found in the Foundation's reply to AAI's response to the Foundation's statement of facts.  These arguments, however, did not alter the Court's ruling in any way. As a result, the Court will deny Defendants' motion to strike (Dkt. #186) as moot.

[9] SFDA and AA are named as Defendants in the Foundation's complaint, but it does not appear that any of the causes of action are asserted against them.  *See* Dkt. #1.

[10] AAI seeks summary judgment on Count V to the extent that the declaratory judgments requested by the Foundation are related to Counts I, II, III, and IV.  As a result, the Court will consider the requests for summary judgment on Count V when considering the related requests under the other Counts.

## A.    Count II – Breach of Contract.

The Foundation claims that AAI breached the 2001 Amendment in two ways: (1) by making false representations, and (2) by refusing to provide information that the Foundation requested.  Dkt. #170 at 11-14.

### 1.    False Representations.

The Foundation contends AAI breached the 2001 Amendment by making a false representation that it was the successor to SFDA, and that the Foundation may therefore void the contract.  *See* Restatement (Second) of Contracts § 164 ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.").  While a party may void a contract if it is based on a fraudulent or material misrepresentation, the Foundation provides no legal authority for the proposition that such a misrepresentation also breaches of the contract.  Moreover, as the Restatement section quoted above makes clear, a misrepresentation renders a contract voidable only if it induces the other party to enter the contract and the induced party is justified in relying on it.  As discussed earlier in this order, the Foundation fails to provide evidence that it relied on the misrepresentation, that its assent was induced by the misrepresentation, or that the misrepresentation was material.  Because the Foundation has failed to provide such evidence, it has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Summary judgment against the Foundation and in favor of AAI is appropriate.

### 2.    Refusing to Provide Information.

The Foundation asserts that it is entitled to summary judgment because AAI refused to provide information regarding the Foundation's tax concerns in 2007.  AAI disagrees and asserts that it is entitled to summary judgment because the undisputed facts show the Foundation breached first by failing to pay AAI its share of royalty payments.  Dkt. #142 at 15.

Under Arizona law, "the victim of a material or total breach is excused from further performance" under the contract, while "the victim of a minor or partial breach must continue his own performance, while collecting damages for whatever loss the minor breach has caused him." *Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959). In this case, it is clear that the Foundation breached the 2001 Amendment by failing to make timely payments to AAI and by stopping payments altogether in July of 2007. Dkt. #143-13 at 10-11. The only question is whether the breach by the Foundation was material. Because the claim of a material breach by the Foundation is an affirmative defense AAI is asserting in response to the Foundation's claim that AAI should have provided the requested tax information, the burden is on AAI to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In determining whether a breach is material, the following factors must be examined:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Foundation Dev. Corp. v. Loehmann's, Inc.*, 788 P.2d 1189, 1197 (Ariz. 1990) (quoting Restatement (Second) of Contracts § 241).

The undisputed facts show a material breach under this test. At the time the Foundation breached, its only significant remaining obligation under the 2001 Amendment was to make timely royalty payments to AAI. By stopping payments in June or July of 2007, the Foundation deprived AAI of the only remaining benefit that AAI reasonably expected under the contract – to be paid royalties for its services. This was not a partial breach for which AAI could be compensated while receiving other benefits under the contract; it was a complete breach of the Foundation's sole remaining obligation. By stopping payments to AAI, the Foundation lost no significant benefit under the contract; AAI had already performed its substantive obligations. Given these undisputed facts, the Foundation's breach

was material.  As a result, AAI was excused from performance under the contract as of June or July of 2007.  *Zancanaro*, 339 P.2d at 750.

Because there is no dispute of material fact as to whether the Foundation committed a material breach by June or July of 2007, AAI is entitled to summary judgment on the Foundation's breach of contract claim.[11]  *Zancanaro*, 339 P.2d at 750.  AAI also asserts that because it is entitled to summary judgment on the breach of contract claim, it is entitled to summary judgment on paragraphs 95, 99, 100, (c), (d), and (e) of the Foundation's complaint. The Court agrees that AAI is entitled to summary judgment on paragraph 99, as the Court cannot "declare that AAI is in breach of the Purported Amendment" given its decision to grant summary judgment to AAI on the Foundation's breach of contract claim.  Dkt. #1, ¶ 99.  The Court also agrees that AAI is entitled to summary judgment on paragraph 95, as the Court has determined that the Foundation breached the 2001 Amendment as discussed above. Dkt. #1, ¶ 95.  The Court also agrees that AAI is entitled to summary judgment on paragraphs (c) and (d).  The Court will discuss paragraphs 100 and (e) below because they relate to AAI and Kroeter's duty of good faith and fair dealing and not to breach of contract.

**B.**     **Count I – Breach of the Covenant of Good Faith and Fair Dealing.**

The Foundation claims that AAI and Kroeter acted in bad faith by "refusing to provide information that would assist the Foundation in determining the respective legal rights,

---

[11] The Foundation also contends that AAI cannot receive summary judgment because: (1) Kroeter made a material misrepresentation about the SFDA/AAI relationship at the time of formation that rendered the 2001 Amendment voidable; (2) the Foundation did not breach the Agreement by stopping payments on the advice of counsel; (3) even if the Foundation did breach, the breach was immaterial; and (4) the Foundation's decision to suspend payments did not occur until September 29, 2007.  Dkt. #160 at 15-16.  As to the first argument, as discussed above, the Foundation has failed to show that the 2001 Amendment was voidable for fraud.  As to the second argument, the Foundation breached the 2001 Amendment when it stopped making payments in June or July of 2007, some time before it received the advice of counsel to suspend payments.  As to the third argument, as shown above, the Foundation's breach was material.  And as to the fourth argument, although the Foundation's official decision, based on advice of counsel, to suspend payments may have occurred in September, it had already stopped making payments as of June or July.  Dkt. #143-13 at 10-11.

- 21 -

obligations, and relationships between and among SFDA, AAP, and AAI," by refusing to seek a joint determination as to the tax consequences of the royalty payments, and by refusing to amend the 2001 Amendment. Dkt. #1 at 10-11. AAI asserts that it did not breach the covenant because the Foundation breached the agreement first by failing to pay AAI its share of royalty payments.

As discussed above, the Foundation breached the 2001 Amendment first by stopping royalty payments and, as a result, AAI was excused from further performance under the contract. This excusal allowed AAI to refuse to perform any further obligations under the contract, including any obligation under the covenant of good faith and fair dealing implied in the contract. *Zancanaro*, 339 P.2d at 750. AAI is entitled to summary judgment on this claim. AAI is also entitled to the requested summary judgment on paragraphs 100 and (e) of the Foundation's complaint because the Court has determined that AAI and Kroeter did not breach the covenant of good faith and fair dealing.

### C. Count III – Unjust Enrichment.

The Foundation claims that it never agreed to allow SFDA to assign its rights to AAI under the 1983 Agreement and that, as a result, AAI has received substantial payments from the Foundation unjustly – payments that should have gone to SFDA. Dkt. #1 at 12. AAI argues that the unjust enrichment claim is barred because the parties had a contract. Dkt. #142 at 16; *see Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 48 P.3d 485, 492 (Ariz. App. 2002). Because the 2001 Amendment expressly provided AAI a right to receive compensation without regard to which company secured the licensee for the foundation, AAI argues, the Foundation is barred from bringing an unjust enrichment claim against AAI. Dkt. #142 at 16. Moreover, AAI argues, any claim based on royalty payments received prior to June 2005 are barred by the statute of limitations, meaning that the Foundation's entire claim is based on payments made from the 2001 Amendment.

The Foundation asserts that the unjust enrichment claim is viable because there is no valid contract between the parties. It argues that the agreement is voidable because of the successor misrepresentations made by AAI, and, without a contract, the unjust enrichment

claim is viable. As discussed above, the 2001 Amendment is not voidable based on a fraudulent misrepresentation. Because there is a valid contract between the parties, unjust enrichment is not available and AAI is entitled to summary judgment on this claim. *Trustmark Ins. Co.*, 38 P.3d at 492.

AAI also asks the Court to grant summary judgment on paragraphs 101, (f), and (g) of the Foundation's complaint. The Court agrees that AAI is entitled to summary judgment on paragraph (f), as the Court cannot declare that AAI or Kroeter have been unjustly enriched. Dkt. #1 at 16. Paragraphs 101 and (g), however, do not directly relate to the unjust enrichment claim. Dkt. #1 at 15-16. As a result, the Court will not grant summary judgment on those paragraphs.

### D. Count IV – Breach of Fiduciary Duty.

The Foundation asserts that AAI and Kroeter breached their fiduciary duty of loyalty by refusing to provide information sought by the Foundation and refusing to seek a joint determination from the IRS. Dkt. #1 at 13-14. As noted above, the 1983 Agreement, as amended by the 2001 Amendment, was terminated by AAI on December 31, 2003. Dkt. #180 at 17. AAI asserts any fiduciary duty it owed the Foundation was also terminated when the contract ended. Dkt. #142 at 16-17.

Generally, after an agency has terminated, "the obligations the agent bears during the agency, including the duty of disclosure, no longer exist." *Coldwell Banker Commercial Group, Inc. v. Camelback Office Park*, 751 P.2d 530, 538 (Ariz. App. 1987). An agent's fiduciary duty to furnish material information can continue beyond termination, however, "when it is foreseeable to the agent that the principal will continue to rely on the agent for information and the agent does not inform the principal that no further information will be provided." Restatement (Third) of Agency § 8.11 cmt. c. Under this Restatement provision, the fiduciary duties of AAI and Kroeter did not end if it was foreseeable that the Foundation would continue to look to them for information and they did not inform the Foundation that such information would not be provided. As neither side has demonstrated an absence of a material dispute of fact on these issues, neither side is entitled to summary judgment.

### E. Count V – Declaratory Judgment.

#### 1. The Foundation's Motion to Strike.

Kroeter seeks summary judgment on portions of Count V and AAI has requested to join in that motion. Dkt. #168. The Foundation has filed a motion to strike Kroeter's request for summary judgment on the ground that his motion was filed in violation of the Court's case management order, which states that "[n]o party shall file more than one motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure unless permission is first obtained." Dkt. #37, ¶ 7(b). Kroeter and AAI are separate parties. Neither has filed more than one motion for summary judgment. The Court will deny the Foundation's motion.[12]

#### 2. Kroeter's motion.

Kroeter moves for summary judgment on the portions of the Foundation's complaint that ask the Court to determine what payments from the Foundation constituted excess benefit transactions under 26 U.S.C. § 4958. Dkt. #168 at 1-2. Under 26 U.S.C. § 4958(a), a substantial tax can be imposed on a non-profit entity and on a person providing services to that entity if they engage in an excess benefit transaction. An excess benefit transaction occurs when a non-profit pays an economic benefit to a person who has the ability "to exercise substantial influence over the affairs of the organization" and the benefit "exceeds the value of the consideration (including the performance of services) received for providing such benefit." 26 U.S.C. § 4958. The Foundation's complaint asks the Court to (1) "make a determination of what portion, if any, of the payments made by the Foundation under the 1983 Agreement and/or the Purported Amendment constitute 'excess compensation' under [26 U.S.C. § 4958] or unlawful private inurement under [26 U.S.C. § 501(c)(3)]" (Dkt. #1, ¶ 96), (2) to "make a determination of whether or not future payments to AAI or Kroeter would constitute 'excess compensation' or unlawful private inurement under those same

---

[12] Although AAI's request to join in Kroeter's motion could be construed as a violation of the case management order, the motion is moot because the Court will deny Kroeter's motion.

provisions" (Dkt. #1, ¶ 97), and (3) to "order AAI and Kroeter, pursuant to the Treasury Regulations, to return immediately all payments that constitute either excess compensation or private inurement under the tax code" (Dkt. #1, ¶ 98).

Kroeter contends that the Court cannot make these determinations because the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, expressly prohibits federal courts from issuing declaratory judgments regarding federal taxation, with a few narrow exceptions which are not applicable here. Dkt. #168 at 11. Under the DJA, a federal court may issue declaratory judgments "except with respect to Federal taxes[.]" 28 U.S.C. § 2201. The prohibition regarding taxes, according to the Supreme Court, protects "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736-37 (1974). Similarly, the Anti-Injunction Act ("AIA") provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The Ninth Circuit has held that the DJA and AIA are co-extensive and that, "[i]f a suit is allowed under the [AIA], it is not barred by the DJA." *Perlowin v. Sassi*, 711 F.2d 910, 911 (9th Cir. 1983).

The question in this case, then, is whether the declaratory relief sought would be allowed under the DJA and AIA. Kroeter contends that it would not be allowed for two reasons: (1) the DJA prohibits declaratory judgment that "call[s] in question a specific provision of the Internal Revenue Code," and this declaratory judgment unquestionably does so, and (2) the type of relief sought here is the same as the type of relief sought in cases between private parties where courts have determined that the DJA barred the suit.

As to the first argument, Kroeter cites several cases. Each of these cases, however, would have had the effect of barring the government's collection of a tax. *See McCarthy v. Marshall*, 723 F.2d 1034, 1037 (1st Cir. 1983) (holding that the DJA barred the requested relief because "the 'primary purpose' of [the] action is to prevent the Internal Revenue Service from assessing and collecting income taxes"); *Chirik v. T.D. Banknorth, N.A.*, No. 06-04866, 2008 WL 186213 (E.D. Pa. Jan. 15, 2008) (holding that the DJA barred the

plaintiff's claim for declaratory relief because the plaintiff was "seeking declaratory relief to avoid future potential tax liabilities"); *Cross v. U.S.*, No. 90-35565, 1991 WL 40306 (9th Cir. Mar. 22, 1991) (holding that a party's claim was barred by the DJA because it was also barred by the AIA); *Kovis v. United States*, No. CV-06-5060-RHW, 2006 WL 3538999 (E. D. Wash. Dec. 7, 2006) (holding that the plaintiffs' claim was barred by the DJA because they requested declaratory judgment that they would receive their father's IRA funds free and clear of any interest by the IRS). Kroeter cites no case in which a court has held that the DJA or AIA prohibited a declaratory judgment merely because the court would be required to apply a provisions of the Internal Revenue Code.

In support of his second argument, Kroeter cites two cases: *Chirik*, 2008 WL 186213 and *Daines v. Alcatel, S.A.*, 105 F. Supp. 2d 1153, 1161 (E.D. Wash 20000). Neither case prohibits the Court from granting or denying the requested declaratory relief.

In *Chirik*, the plaintiff went to the bank to open an Individual Retirement Account ("IRA"), which receives beneficial tax treatment, but the bank opened an ordinary savings account instead. To later remedy the situation, the plaintiff sued for declaratory judgment and asked the court to convert his savings account into an IRA. The court determined that the DJA barred the plaintiff's claim for declaratory relief because the Plaintiff was "seeking declaratory relief to avoid future potential tax liabilities." *Chirik*, 2008 WL 186213 at *6. In other words, the plaintiff asked the court to change the nature of his savings account so that his future tax liabilities would be different. This is markedly different from the present case. The Foundation is not asking the Court to determine its future tax liabilities or to make a binding determination that the payments to AAI were not excess benefit transactions so that it can avoid potential tax liabilities. Rather, the Foundation asks the Court to determine the liabilities between the Foundation and Defendants so that the parties know what monies are owed to what entities. *Chirik* is inapplicable.

In *Daines*, the president and CEO of a company sold a significant amount of his company's stock to Defendant. As part of the transaction, the president was to continue working as president and CEO. To ensure that he performed, the defendant required the

president to put $6 million of the purchase price of the company's stock in an escrow account. The following year, the bank holding the escrow account issued two Form 1099s which showed that the president had received as income the $6 million that was in escrow. The president did not want to be taxed on that $6 million because it was still in escrow. He filed suit seeking a declaratory judgment that the Form 1099s should not have been issued. The court held that it could not provide the requested declaratory judgement because the DJA prevented it. To determine that the 1099s should not have been issued, the court would also be required to determine whether the 1099s were correct and whether the president could be taxed on the $6 million. This would "trample [the IRS's] discretion to determine who, if anyone, is liable for federal income tax on the $6 million and would erect the barrier of *res judicata* directly in the path of any attempts to assess or collect taxes on the $6 million." *Daines*, 105 F. Supp. 2d at 1158. The purpose of the president's request for declaratory judgment in *Daines* was to "restrain[] the assessment or collection" of tax on the $6 million by taking away the Form 1099 which would allow the IRS to assess and collect the tax. 26 U.S.C. § 7421(a). This is precisely the type of action that the AIA and DJA prevent.

In the present case, the purpose of the Foundation's request for declaratory judgment has nothing to do with tax liability, but instead is focused on the parties' liabilities for past and future payments. *Daines* is distinguishable.

The Court finds that the requested declaratory judgment is not prohibited by the DJA. As a result, Kroeter is not entitled to summary judgment on Count V.

**IT IS ORDERED:**

1.      AAI's motion for summary judgment (Dkt. #142) is **granted in part and denied in part**.

2.      Kroeter's motion for partial summary judgment (Dkt. #168) is **denied**.

3.      The Foundation parties' motion for summary judgment (Dkt. #170) is **granted in part and denied in part**.

4.      The Foundation's motion to strike (Dkt. #175) is **denied**.

5.      Defendants' motion to strike (Dkt. #186) is **denied as moot**.

6. The Court will set a status conference before the Honorable David G. Campbell to be held at **3:30 p.m. on April 2, 2010**, in Courtroom 603, 401 West Washington Street, Phoenix, Arizona 85003. The purpose of the status conference will be to address the trial in this matter and whether the Court should rule on the excess benefits transaction issue separately from the trial on other issues.

DATED this 15th day of March, 2010.

_____
David G. Campbell
United States District Judge